**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**GARY HARALSON,**

> **Petitioner,**

**vs.**

> **CASE NO. 1:05cv112-MP/WCS**

**FLORIDA PAROLE COMMISSION,**

> **Respondent.**

_____/


**REPORT AND RECOMMENDATION**

This is a petition for writ of habeas corpus filed by Gary Haralson pursuant to 28

U.S.C. § 2254.  Doc. 1.  Petitioner challenges the revocation of his conditional release

by the Florida Parole Commission.  Respondent filed an answer, doc. 10, and Petitioner

filed a traverse, doc. 11.

**Procedural History**

Petitioner entered a nolo contendere plea and was convicted on June 14, 1993,

of second degree murder.  Ex. C (judgment), Doc. 10-2, pp. 14-15.[1] He was sentenced

---

[1] The paper exhibits are attachments to document 10 and have been assigned
letters by Respondent.  However, these exhibits were filed electronically; that is, the

to a 24 year prison term.  *Id*., p. 16.  The murder was committed on February 3, 1993.

*Id*., p. 12.  There was evidence that the Petitioner also had repeatedly sexually

assaulted the wife of the murder victim.  *Id*., Ex. B, pp. 6-9.

On April 1, 2003, Petitioner was released by the Commission to "conditional

release."  *Id*., Ex. D, pp. 23-28.  Condition 14 stated:  "You shall submit yourself for an

evaluation *to determine if* sex offender therapy is needed and follow any recommended

treatment."  *Id.*, p. 25 (emphasis added).  Condition 26 stated:  "You shall participate in

an anger and stress management program until a determination is made by authorities

of the program that you are no longer in need of such treatment or you complete your

term of supervision, whichever occurs first."  *Id.*, p. 26.  Petitioner refused to sign the

places where he would "acknowledge" that he was subject to those conditions.  *Id*., pp.

23, 27, 28.

On April 17, 2004, a violation report was entered charging Petitioner with

violations of conditions 14 and 26.  *Id.*, Ex. E, p. 30.  A warrant was issued.  Doc. 10-3,

Ex. F, p. 2.  A violation hearing was held on May 24, 2004.  *Id.*, Ex. G, p. 4.  The form

indicates that Petitioner waived appointment of an attorney and denied the allegations.

*Id.* and p. 12.  Petitioner requested witnesses Guy Haralson (his brother), Lucille

---

exhibits were electronically scanned and a digital image is available for viewing by
computer.  Voluminous exhibits are usually separated in groups of about 30 pages for
scanning and electronic filing.  The electronic docket assigns subsidiary numbers to
these groups and then assigns page numbers to that group.  Thus, Respondent's
memorandum is doc. 10-1 on the electronic docket, and the first 31 pages of exhibits is
doc. 10-2.  It is convenient for the court to refer to the document numbers and
pagination on the electronic docket.  However, it is understood that Petitioner does not
have access to the electronic docket, so this reference will also refer to the exhibit letter
as filed.  A secondary reference to a page number will not be attempted as often within
an exhibit are several documents with or without pagination.

Haralson (his mother), Dr. Paul Sandman, and the records custodian for Behavioral

Choices in Lake Wales, Florida, *Id.*, p. 12.  Testimony was received from these

witnesses and from Petitioner.  *Id.*, pp. 6-9. The hearing examiner found Petitioner guilty

of both violations and recommended that release be revoked.  *Id.*, pp. 9-10.  The

Commission revoked Petitioner's conditional release.  *Id.*, Ex. H, p. 14.

Petitioner filed a petition for writ of habeas corpus in the circuit court in the Third

Judicial Circuit, in and for Lafayette County, Florida.  Doc. 10-3, Ex. I, pp. 17-30.  The

petition was denied.  Doc. 10-4, Ex. K, pp. 20-22.  Review was denied in the appellate

court "on the merits."  *Id.*, Ex. L, pp. 25-26.  Respondent concedes exhaustion of state

court remedies.

## Section 2254 Standard of Review

For claims that were properly exhausted and adjudicated in state court, this

court's review is limited.  "[A] determination of a factual issue made by a State court

shall be presumed to be correct," and Petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);

Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).

Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

the adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding."  § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is

satisfied "only if it is shown by clear and convincing evidence that the state court's

presumptively correct factual findings do not enjoy support in the record."  Lomholt v.

Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

**Legal analysis**

**Ground One**

Petitioner asserts that he did not agree to be bound by conditions 14 and 26 of his conditional release.  He argues that the Commission violated his due process rights and the Ex Post Facto Clause when it released him subject to conditions 14 and 26.

Petitioner made both a due process and an *ex post facto* claim in his state petition for writ of habeas corpus.  Doc. 10-3, Ex. I, p. 18-19.  In denying Petitioner's state habeas corpus petition, the state court found that "the hearing examiner's factual findings . . . were supported by competent substantial evidence . . . ."  Doc. 10-4, Ex. K, p. 21.  The court also held that Petitioner had been afforded procedural due process prior to revocation and it found that Petitioner's claims lacked merit.  *Id.*, pp. 21-22.  The court did not discuss its reasoning.

Respondent contends that the claim as raised in this court is founded entirely upon state law, and does not involve any federal right.  A violation of a state rule of procedure or of a state law is not itself a violation of the federal constitution.  Engle v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); Wallace v. Turner, 695 F.2d 545, 548 (11th Cir. 1983) (procedural rule); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989) (sentencing guidelines); Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction).

The character of conditional release is, of course, defined by state law.  As to that, the Florida Supreme Court has said:  "[C]onditional release is not an increased punishment program at all, but rather an assistance program designed to 'help these former inmates in bridging the gap between prison and the outside world.' "  Mayes v. Moore, 827 So. 2d 967, 971 (Fla. 2002), *cert. denied*, 539 U.S. 904 (2003), *quoting* Duncan v. Moore, 754 So. 2d 708, 710 (Fla. 2000).

> [C]onditional release is not a form of sentence, and it is not imposed by a court. . . .  Inmates who are subject to conditional release are identified and their placement on conditional release is required, not by the sentencing court, but by the Parole Commission.

*Id.*  As further explained in <u>Mayes v. Moore</u>,

> Prior to the 1988 enactment of the conditional release statute, prison inmates' sentences expired when, with the combination of actual time served and gain time, they were released from prison.  *Since 1988, however, the Legislature has provided that certain inmates must remain under supervision, as determined by the commission, after release from prison for a period of time equal to the amount of gain time awarded*.  This supervision has been provided under the terms of the statute, and thus, *all have constructive knowledge of the applicable law*.
>
> In addition, *the conditional release statute specifically provides the commission with the authority to establish the terms and conditions of conditional release,[3] and the general Parole Commission statute lists all the powers of the Parole Commission (including the establishment of terms and conditions) under its various programs such as control release, parole, and conditional release.*[4] Further, the Florida Constitution gives the Parole Commission the authority to "grant paroles or conditional releases to persons under sentences for crime." See art. IV, § 8, Fla. Const. Accordingly, while the Legislature by statute has outlined some of the duties to be exercised by the commission, *it is not the Legislature that gives the commission the power to place inmates on supervision; the power flows from the Florida Constitution*.
>
> > [3] Section 947.1405(2)(c) provides, in pertinent part, that "[a] panel of no fewer than two commissioners *shall establish the terms and conditions* of any such release." § 947.1405(2)(c), Fla. Stat. (2001).
> >
> > [4] Section 947.13 (Powers and Duties of Commission), states, in pertinent part:
> > The commission shall have the powers and perform the duties of:
> > .... (f) *Establishing the terms and conditions of persons released on conditional release* under s. 947.1405....
> > § 947.13(1)(f), Fla. Stat. (2001).

827 So. 2d at 971-972 (emphasis added).  As previously noted, Petitioner's offense was committed in 1993.

Thus, conditional release is not a part of a sentence.  The original sentence remains in effect.  While on release, Petitioner was still "serving a sentence, a portion of

which is in prison, and the remainder in freedom subject to supervision as if on parole."

Haliburton v. State, 561 So.2d 248, 252 (Fla. 1990), *cert. denied*, 501 U.S. 1259 (1991).

Further, under Florida law, the terms of conditional release are to be established by the Florida Parole Commission. The Parole Commission does not bargain with prisoners as to the terms of conditional release. Petitioner's refusal to acknowledge that he was bound by conditions 14 and 26 was of no legal effect.

Florida law governing the imposition of executive clemency is instructive here by analogy, since conditional release is yet another way to change the service of a sentence to a less onerous alternative:

> When granted [a pardon] is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed. Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent determines what shall be done. So far as a pardon legitimately cuts down a penalty it affects the judgment imposing it. *No one doubts that a reduction of the term of an imprisonment or the amount of a fine would limit the sentence effectively on the one side and on the other would leave the reduced term or fine valid and to be enforced, and that the convict's consent is not required.*
>
> When we come to the commutation of death to imprisonment for life it is hard to see how consent has any more to do with it . . . . Supposing that [the prisoner] did not accept the change, he could not have got himself hanged against the Executive order. Supposing that he did accept, he could not affect the judgment to be carried out. The considerations that led to the modification had nothing to do with his will. The only question is whether the substituted punishment was authorized by law . . . .

Biddle v. Perovich, 274 U.S. 480, 486-487, 47 S.Ct. 664, 665 71 L.Ed.2d 1161 (1927) (emphasis added). A prisoner in Florida will not be allowed to enjoy the liberty afforded by executive clemency without becoming bound by conditions established in the grant of such clemency. *See* Alvarez v. State, 50 Fla. 24, 39 So. 481, 484 (1905) ("where a

criminal accepts a pardon, he accepts it subject to all its valid conditions and limitations, and will be held bound to a compliance therewith"); Chastain v. Mayo, 56 So. 2d 540, 542 (Fla. 1952) ("when a conditional pardon is accepted, the pardonee accepts it subject to all its conditions and limitations and is bound to comply therewith").

Accordingly, there is no due process claim here.  It is to be expected that when release is granted with supervision to follow, certain conditions will be attached to govern the behavior of the offender on release.  Sandin v. Connor, 515 U.S. 472, 486, 115 S.Ct. 2293, 2301, 132 L.Ed.2d 552 (1995) (absent an "atypical, significant deprivation" there is no liberty interest protected by due process).  Moreover, under Florida law, the conditions are established unilaterally by the Florida Parole Commission, not by contract with the prisoner.

The *ex post facto* claim is equally without merit.  This statute took effect in 1988, long before Petitioner committed his offense, and therefore there is no Ex Post Facto violation.  Duncan v. Moore, 754 So. 2d at 711.  Consequently, Petitioner has not shown that the state court's adjudication of the merits of these federal claims has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Ground Two**

Petitioner contends that the underlying statutes were repealed from October 1, 1991, to October 1, 1993, and that there was no conditional release statute in effect when he committed his offense, in February, 1993.  He argues that the application of the repealed conditional release statute to him violated due process.

Case No. 1:05cv112-MP/WCS

Petitioner's repeal argument is far from clear.  Further, it is doubtful that Petitioner would want the relief that might be ordered were he correct that he was not eligible for control release; that is, immediate return to prison to serve all of his prison sentence.  In any event, this is not a federal claim.  It is a state law claim not cognizable in this court.

**Ground Three**

This seems to be another version of ground two.  Petitioner contends that he was subjected to "mandatory conditional release," a program which he alleges was repealed long ago.  The claim is a state law claim and not cognizable in this court.

**Ground Four**

Petitioner contends that he was subjected to a condition of supervision under the Florida Sex Predators Act, a statute passed after he committed his offenses.  It would appear that here Petitioner attacks condition 14, that he participate in an evaluation to see whether he needed "sex offender therapy."  This again is purely a state law claim. Further, as a matter of state law, the Commission had authority to impose this condition even before the Florida Sex Predators Act was enacted.  The basis for imposing the condition is also a matter of state law within the discretion of the Commission.  There is no *ex post facto* claim here.

**Ground Five**

Petitioner contends that he was denied due process in the decision to revoke his conditional release.  He argues that the violations were not proved by the greater weight of the evidence.

Dr. Sandman testified that when Petitioner denied having raped the wife of the murder victim, Dr. Sandman referred Petitioner to a polygraph examination, planning to recommend the termination of the sex offender treatment condition if the polygraph indicated that he was telling the truth.  Doc. 10-3, Ex. G, p. 7.  Wayne Porter testified that Petitioner refused to take the polygraph examination.  *Id.*  Melissa Fort testified that she had no record that Petitioner attended anger management treatment.  *Id.*, p. 8.

Petitioner did not dispute any of this testimony.  *Id.*, p. 8.  Petitioner now has not come forth with any evidence or argument to challenge the factual finding that he violated the conditions of his release.  A due process claim as to the sufficiency of the evidence has not been shown.  *Cf.,* Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) (where a prisoner has a liberty interest in good time credits, minimum due process requires that the findings of the prison disciplinary board are supported by "some evidence" in the record).

Petitioner also claims that his waiver of any right to counsel was invalid because he was told by the hearing examiner that the charges were not that serious.  The premise of this claim is faulty.  There is no absolute right to counsel at a parole or probation revocation hearing.  Gagnon v. Scarpelli, 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973) (probation revocation).  The Court said:

> It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision.  Presumptively, it may be said that counsel should be provided in cases where, after being

informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.  In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself.

411 U.S. at 790-791, 93 S.Ct. at 1764.

At his hearing, Petitioner did not contest the factual premise of the violations alleged.  He only argued there, as he does here, that the conditions were unlawful. Petitioner has shown himself fully capable of articulating his legal claims there and here. Thus, he has not shown that he had a right to counsel for his revocation hearing.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Gary Haralson, Doc. 1, challenging the revocation of his conditional release by the Florida Parole Commission, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on June 20, 2006.

s/    William C. Sherrill, Jr.
WILLIAM C. SHERRILL, JR.
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 1:05cv112-MP/WCS